UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. ___25-cr-80189-Smith/Reinhart___

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
26 U.S.C. § 7203

FILED BY_____*TM*_____D.C.

Nov 6, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

UNITED STATES OF AMERICA

v.

JOSEPH ANTHONY DUVA and
INGRID DUVA,

        Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Small Business Administration

1.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

2.     The SBA enabled and provided for loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

### The Coronavirus Aid, Relief, and Economic Security Act

3.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted in March of 2020 to provide emergency financial assistance to Americans suffering economic

harm caused by the COVID-19 pandemic.  In addition to traditional SBA funding programs, the CARES Act established several temporary programs and provided for the expansion of others to address the COVID-19 outbreak, which was declared a nationwide disaster by the President of the United States on March 13, 2020.

**The Paycheck Protection Program**

4.      One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5.      In order to obtain a PPP loan, a qualifying business was required to have an authorized representative acknowledge the program rules and make certain affirmative certifications in the loan application.  Two of the main certifications included:

      a.   the amount of average monthly payroll leading up to the application; and

      b.   that the loan would be used only for necessary business expenses, such as payroll costs, interest on mortgages, rent, and utilities.

6.      The average monthly payroll amount was used to calculate the amount of the loan. "Average monthly payroll" refers to what the business actually paid in payroll during the prior year leading up to the date of the loan application.  If the business did not have prior payroll expenses or existing employees, the business did not qualify for a PPP loan. For proof of average monthly payroll, applicants were required to provide documentation showing its payroll expenses, such as tax forms and other business records.

7.      A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by

2

the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

### The Economic Injury Disaster Loan Program

8.     Another source of relief provided by the CARES Act were Economic Injury Disaster Loans ("EIDL") to business owners negatively affected by the COVID-19 pandemic. Applicants applied for EIDL directly through the SBA, which reviewed the information and dispersed the funds to the applicants without an intermediary financial institution.

9.     Using the SBA online portal, a business was required to submit an EIDL application to the SBA and provide information in support of each EIDL application about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. Applicants were not required to provide supporting documentation with EIDL applications but were required to certify that all the information in the application was true and correct to the best of the applicant's knowledge. All applications submitted on July 11, 2020 or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, which were located in: Boydton, Virginia; West Des Moines, Iowa; or Quincy, Washington.

10.     EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA.

11.     Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds

3

based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, Virginia. Upon approval of an application for an EIDL or cash advance grant, the SBA would disburse the funds.

## Financial Institutions and Lenders

12.     Bank 1 was a financial institution and financial services provider headquartered in Cherry Hill, New Jersey with offices located throughout the United States, including in the Southern District of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

13.     Bank 1 processed PPP and EIDL applications funded by the SBA.

## The Defendants and Related Entities

14.     Clematis Street Entertainment, Inc., ("CSE") was a company incorporated in the State of Florida with a principal place of business located at 329B Clematis Street, West Palm Beach, Florida 33401. **JOSEPH ANTHONY DUVA** was the "President and Sole Director."

15.     Okeechobee Amusements ("OA") was a company incorporated in the State of Florida with a principal place of business located at 2138 Okeechobee Boulevard, West Palm Beach, Florida 33409. **JOSEPH ANTHONY DUVA** was the sole authorized manager.

16.     Italian American Society, Inc., ("IAS") was a company incorporated in the State of Florida with a principal place of business located at 10800 North Military Trail, Suite 104, Palm Beach Gardens, Florida 33410. **INGRID DUVA** was the Director of IAS.

17.     **JOSEPH ANTHONY DUVA** and **INGRID DUVA** resided in Palm Beach County, Florida.

## COUNT 1
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 1349)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 2020, the exact date being unknown to the Grand Jury, and continuing through in or around May 2021, in Palm Beach County, Florida, in the Southern District of Florida and elsewhere, the defendants,

### JOSEPH ANTHONY DUVA
### and
### INGRID DUVA,

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants to unlawfully enrich themselves and each other, by, among other things: (a) submitting and causing the submission of false and fraudulent applications for PPP and EIDL loans made through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud proceeds for their personal use and benefit, and the use and benefit of others.

## MANNER AND MEANS OF THE CONSPIRACY

4.      The manner and means by which **JOSEPH ANTHONY DUVA** and **INGRID DUVA** sought to accomplish the purpose of the conspiracy included. among other things. the following:

(a) **JOSEPH ANTHONY DUVA** submitted and caused the submission of false and fraudulent EIDL and PPP loan applications on behalf of, among others, CSE and OA;

(b) **JOSEPH ANTHONY DUVA** submitted and caused the submission of false and fraudulent information and documentation in support of the EIDL and PPP loan applications, including false and fraudulent IRS forms;

(c) As a result of the false and fraudulent EIDL and PPP loan applications, **JOSEPH ANTHONY DUVA**, on behalf of CSE and OA, received EIDL and PPP loans in the total combined approximate amount of $928,643;

(d) **INGRID DUVA** submitted and caused the submission of false and fraudulent EIDL and PPP loan applications on behalf of, among others, IAS;

(e) **INGRID DUVA** submitted and caused the submission of false and fraudulent information and documentation in support of the EIDL and PPP loan applications, including false and fraudulent IRS forms;

(f) As a result of the false and fraudulent EIDL and PPP loan applications, **INGRID DUVA**, on behalf of IAS, received EIDL and PPP loans in the total combined approximate amount of $214,554; and

(g) **JOSEPH ANTHONY DUVA** and **INGRID DUVA** unlawfully diverted the EIDL and PPP funds to their own personal benefit.

All in violation of Title 18, United States Code. Section 1349.

## COUNTS 2-9
## Wire Fraud
## (18 U.S.C. § 1343)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 2020 to in or around May 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOSEPH ANTHONY DUVA**
and
**INGRID DUVA,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3.      It was the purpose of the scheme and artifice for defendants, **JOSEPH ANTHONY DUVA** and **INGRID DUVA**, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for PPP and EIDL loans made through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting the loan proceeds for their personal use and benefit, and the use and benefit of others.

7

### Manner and Means of the Scheme and Artifice

4.      The manner and means by which **JOSEPH ANTHONY DUVA** and **INGRID DUVA** sought to accomplish the purpose of the scheme and artifice included, among other things, the following:

(a) **JOSEPH ANTHONY DUVA** submitted and caused the submission of false and fraudulent EIDL and PPP loan applications on behalf of, among others, CSE and OA;

(b) In furtherance of the scheme, **JOSEPH ANTHONY DUVA** submitted and caused the submission of false and fraudulent information and documentation in support of the EIDL and PPP loan applications, including false and fraudulent IRS forms;

(c) **INGRID DUVA** submitted and caused the submission of false and fraudulent EIDL and PPP loan applications on behalf of, among others, IAS;

(d) In furtherance of the scheme, **INGRID DUVA** submitted and caused the submission of false and fraudulent information and documentation in support of the EIDL and PPP loan applications, including false and fraudulent IRS forms;

(e) As a result of the false and fraudulent EIDL and PPP loan applications, **JOSEPH ANTHONY DUVA**, on behalf of CSE and OA, and **INGRID DUVA**, on behalf of IAS, received a total combined approximate amount of $1,143,197 in EIDL and PPP funds; and

(f) **JOSEPH ANTHONY DUVA** and **INGRID DUVA** unlawfully diverted the EIDL and PPP funds to their own personal benefit.

### USE OF THE WIRES

5.      On or about the dates specified as to each count below, in Palm Beach County, the Southern District of Florida, **JOSEPH ANTHONY DUVA** and **INGRID DUVA**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain

8

money and property by means of materially false and fraudulent pretenses, representations, and
promises, knowing that the pretenses, representations, and promises were false and fraudulent
when made, did knowingly transmit and cause to be transmitted in interstate and foreign
commerce, by means of wire communications, certain writings, signs, signals, pictures, and
sounds, as particularly described below:

| Count | Defendant | Date | Description of Wire |
|---|---|---|---|
| 2 | JOSEPH ANTHONY DUVA | April 1, 2020 | Electronic submission of a fraudulent EIDL application in the approximate amount of $22,000 from the Southern District of Florida to Bank 1 on behalf of CSE |
| 3 | INGRID DUVA | April 1, 2020 | Electronic submission of a fraudulent EIDL application in the approximate amount of $8,000 from the Southern District of Florida to Bank 1 on behalf of IAS |
| 4 | JOSEPH ANTHONY DUVA | April 27, 2020 | Electronic submission of a fraudulent First Draw PPP application in the approximate amount of $157,000 from the Southern District of Florida to Bank 1 on behalf of CSE |
| 5 | INGRID DUVA | April 27, 2020 | Electronic submission of a fraudulent First Draw PPP application in the approximate amount of $65,125 to Bank 1 on behalf of IAS |
| 6 | JOSEPH ANTHONY DUVA | July 19, 2020 | Electronic submission of a fraudulent First Draw PPP application in the approximate amount of $231,300 from the Southern District of Florida to Bank 1 on behalf of OA |
| 7 | JOSEPH ANTHONY DUVA | February 2, 2021 | Electronic submission of a fraudulent Second Draw PPP application in the approximate amount of $287,343 from the Southern District of Florida to Bank 1 on behalf of CSE |
| 8 | JOSEPH ANTHONY DUVA | February 5, 2021 | Electronic submission of a fraudulent Second Draw PPP application in the approximate amount of $231,300 from the Southern District of Florida to Bank 1 on behalf of OA |
| 9 | INGRID DUVA | February 3, 2021 | Deposit of PPP Funds in the approximate amount of $141,428 from Bank 1 into the account of IAS in the Southern District of Florida |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 10
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around April 2020, the exact date being unknown to the Grand Jury, and continuing through in or around February 2021, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendants,

### JOSEPH ANTHONY DUVA
### and
### INGRID DUVA,

did knowingly and willfully combine, conspire, confederate, and agree with each other to knowingly engage in a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

3.     It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 11-14
### Money Laundering
### (18 U.S.C. § 1957)

1.     The General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JOSEPH ANTHONY DUVA,**

did knowingly engage in a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, as described below:

| Count | Date | Defendant | Description of Transaction |
|-------|------|-----------|----------------------------|
| 11 | 4/15/21 | JOSEPH ANTHONY DUVA | Payment to New Auto Toy Store by cashier check in the amount of $31,136 from a Bank 1 account ending in 0110 |
| 12 | 4/15/21 | JOSEPH ANTHONY DUVA | Purchase of jewelry from Diamonds East International by cashier check in the amount of $28,450 from a Bank 1 account ending in 9039 |
| 13 | 4/20/21 | JOSEPH ANTHONY DUVA | Deposit in Robinhood account in the amount of $10,500 from Bank 1 account ending in 0110 |
| 14 | 5/10/21 | JOSEPH ANTHONY DUVA | Debit card purchase at Cartier, in the amount of $11,180 from Bank 1 account ending in 1822 |

3.      It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 15
### Failure to File Tax Return
### (26 U.S.C. § 7203)

1.      The General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      During the calendar year 2021, the defendant,

11

**JOSEPH ANTHONY DUVA,**

who was a resident of North Palm Beach, Florida, in Palm Beach County, in the Southern District of Florida, had and received gross income of at least $200,000; that by reason of such gross income, he was required by law, following the close of the calendar year 2021, and on or before April 17, 2022, to make an income tax return to the Internal Revenue Service Center, at Charlotte, North Carolina, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled; that well knowing and believing all of the foregoing, he did willfully fail, on or before April 17, 2022, in the Southern District of Florida, and elsewhere, to make an income tax return, in violation of Title 26, United States Code, Section 7203.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **JOSEPH ANTHONY DUVA** and **INGRID DUVA**, have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds the person obtained directly or indirectly as a result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendants shall forfeit to the United States of America, any property, real or personal, involved in the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(1)(A).

All pursuant to Title 18, United States Code, Sections 982(a)(1)(A) and (a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

*Adam C. McMichael* for
_____
JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

*Justin Chapman*
_____
JUSTIN CHAPMAN
ASSISTANT UNITED STATES ATTORNEY

13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO.: _____

v.

JOSEPH ANTHONY DUVA
and INGRID DUVA

_____ /
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____

Number of New Defendants _____

Total number of new counts _____

**Court Division** (select one)

☐ Miami     ☐ Key West     ☐ FTP
☐ FTL       ☑ WPB

I do hereby certify that:

1.    I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3.    Interpreter: (Yes or No) No____
      List language and/or dialect: _____

4.    This case will take ___5___ days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

      (Check only one)                         (Check only one)
      I   ☑   0 to  5 days                    ☐ Petty
      II  ☐   6 to 10 days                    ☐ Minor
      III ☐  11 to 20 days                    ☐ Misdemeanor
      IV  ☐  21 to 60 days                    ☑ Felony
      V   ☐  61 days and over

6.    Has this case been previously filed in this District Court? (Yes or No) No___
      If yes, Judge _____ Case No. _____

7.    Has a complaint been filed in this matter? (Yes or No) No___
      If yes, Judge _____ Magistrate Case No. _____

8.    Does this case relate to a previously filed matter in this District Court? (Yes or No) No___
      If yes, Judge _____ Case No. _____

9.    Defendant(s) in federal custody as of _____

10.   Defendant(s) in state custody as of _____

11.   Rule 20 from the _____ District of _____

12.   Is this a potential death penalty case? (Yes or No) No___

13.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No___

14.   Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No___

15.   Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No___

16.   Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No___

By: _____Justin Chapman_____
JUSTIN CHAPMAN
Assistant United States Attorney
FL Bar No.         85778

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Joseph Anthony Duva

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349

* **Max. Term of Imprisonment**: 20 Years
* **Mandatory Min. Term of Imprisonment (if applicable)**: N/A
* **Max. Supervised Release**: 3 years
* **Max Fine**: $250,000 / $100 Special Assessment

Count #: 2, 4, 6, 7 and 8

Wire Fraud

18 U.S.C. § 1343

* **Max. Term of Imprisonment**: 20 Years
* **Mandatory Min. Term of Imprisonment (if applicable)**: N/A
* **Max. Supervised Release**: 3 years
* **Max Fine**: $250,000

Count #: 10

Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h)

* **Max. Term of Imprisonment**: 10 Years
* **Mandatory Min. Term of Imprisonment (if applicable)**: N/A
* **Max. Supervised Release**: 3 years
* **Max Fine**: $250,000 / $100 Special Assessment

**\*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 11, 12, 13 and 14

Money Laundering

18 U.S.C. § 1957

* **Max. Term of Imprisonment:** 10 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max Fine:** $250,000 / $100 Special Assessment

Count #: 15

Failure to File Tax Return

26 U.S.C. § 7203

* **Max. Term of Imprisonment:** 1 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 1 years
* **Max Fine:** $25,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Ingrid Duva _____

**Case No**: _____

Count #: 1

Conspiracy to Commit an Offense Against the United States, 18 U.S.C. § 1349

* **Max. Term of Imprisonment:** 20 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max Fine:** $250,000 / $100 Special Assessment

Count #: 3, 5 and 9

Wire Fraud _____

18 U.S.C. § 1343 _____

* **Max. Term of Imprisonment:** 20 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max Fine:** $250,000

Count #: 10

Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h) _____

* **Max. Term of Imprisonment:** 10 Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max Fine:** $250,000 / $100 Special Assessment

**\*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**